**THIS NOTE HAS NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "33 ACT"), OR UNDER ANY STATE SECURITIES LAWS. THIS NOTE HAS BEEN ISSUED PURSUANT TO EXEMPTIONS UNDER THE 33 ACT. THIS NOTE MAY NOT BE SOLD, OFFERED FOR SALE, PLEDGED OR HYPOTHECATED.**

### SECURED PROMISSORY NOTE

$211,012.00                                                                                                         May 31, 2019

                                                                                                                  Newport Beach, CA

**THIS SECURED PROMISSORY NOTE RENEWS IN ITS ENTIRETY THAT CERTAIN PROMISSORY NOTE, DATED DECEMBER 4, 2017, IN THE ORIGINAL PRINCIPAL AMOUNT OF $150,000.00 (THE "ORIGINAL NOTE") AND INCLUDES A $37,959 LEGAL OBLIGATION. THIS SECURED PROMISSORY NOTE IS DELIVERED IN RENEWAL AND RESTATEMENT OF THE ORIGINAL NOTE.**

BORROWER:  **NuEyes Technologies, Inc.**

ADDRESS: 120 Newport Center Drive, #232,  Newport Beach, CA 92660

(Hereinafter referred to as "Borrower")

LENDER: **Medical Device Partners, LLC**

ADDRESS: 9677 Bridgebrook Drive, Boca Raton, FL 33496

(Hereinafter referred to as "Lender")

1. Principal and Interest.  For value received, Borrower, a California corporation, hereby promises to pay to the order of Lender, a Delaware limited liability company, the principal sum of $211,012.00 plus interest on the unpaid principal amount hereof, at the annual rate of ten percent (10%).

2. Maturity. Beginning on July 1, 2019, and continuing on the last Business Day of each month thereafter until June 30, 2021, Borrowers will repay the Note and any accrued but unpaid interest in consecutive monthly installments equal to 1/24 of the principal amount of the Note outstanding on May 31, 2019.  Notwithstanding the foregoing, the entire unpaid principal sum of this Note, together with accrued and unpaid interest thereon, shall become immediately due and payable upon the insolvency of the Company, the commission of any act of bankruptcy by the Company, the execution by the Company of a general assignment for the benefit of creditors, the filing by or against the Company of a petition in bankruptcy or any petition for relief under the federal bankruptcy act or the continuation of such petition without dismissal for a period of ninety (90)

days or more, or the appointment of a receiver or trustee to take possession of the property or assets of the Company.

3. Payment. All payments hereunder shall be made in lawful money of the United States of America directly to the Lender at the address of Lender set forth above, or at such other place or to such account as the Lender from time to time shall designate in a written notice to the Company. Each payment shall be applied first to the payment of all accrued interest and the balance of such payment, if any, shall be applied to the principal amount hereof. This Note may be prepaid, in whole or in part, at any time and from time to time without fee, premium or penalty.

Whenever any payment hereunder shall be stated to be due, or any other date specified hereunder would otherwise occur, on a day other than a Business Day (as defined below), then, except as otherwise provided herein, such payment shall be made, and such payment date or other date shall occur, on the next succeeding Business Day. As used herein, "Business Day" means a day (i) other than Saturday or Sunday, and (ii) on which commercial banks are open for business in Newport Beach, California.

Monies received by Lender from any source for application toward payment of the Obligations shall be applied to accrued interest and then to principal. If a Default occurs, monies may be applied to the Obligations in any manner or order deemed appropriate by Lender.

If any payment received by Lender under this Note or other Loan Documents is rescinded, avoided or for any reason returned by Lender because of any adverse claim or threatened action, the returned payment shall remain payable as an obligation of all persons liable under this Note or other Loan Documents as though such payment had not been made.

4. Use of Proceeds. Borrower has used the proceeds of the Note for the commercial purposes of Borrower, as follows: working capital purposes.

5. Interest and Fee(s) Computation (Actual/360). Interest and fees, if any, shall be computed on the basis of a 360-day year for the actual number of days in the applicable period ("Actual/360 Computation"). The Actual/360 Computation determines the annual effective interest yield by taking the stated (nominal) rate for a year's period and then dividing said rate by 360 to determine the daily periodic rate to be applied for each day in the applicable period. Application of the Actual/360 Computation produces an annualized effective rate exceeding the nominal rate.

6. Definitions. All terms that are used but not otherwise defined in any of the Note Documents shall have the definitions provided in the Uniform Commercial Code in effect in the State of California.

7. Attorneys' Fees and Other Collection Costs. Borrower shall pay all of Lender's reasonable expenses actually incurred to enforce or collect any of the Obligations including, without limitation, reasonable arbitration, paralegals', attorneys' and experts' fees and expenses, whether incurred without the commencement of a suit, in any trial, arbitration, or administrative proceeding, or in any appellate or bankruptcy proceeding.

8. Usury.  If at any time the effective interest rate under this Note would, but for this paragraph, exceed the maximum lawful rate, the effective interest rate under this Note shall be the maximum lawful rate, and any amount received by Lender in excess of such rate shall be applied to principal and then to fees and expenses, or, if no such amounts are owing, returned to Borrower.

9. Financial and Other Information.  Borrower shall deliver to Lender such information as Lender may reasonably request from time to time, including without limitation, financial statements and information pertaining to Borrower's financial condition.  Such information shall be true, complete, and accurate.

10. Waivers and Amendments.  No waivers, amendments or modifications of this Note shall be valid unless in writing and signed by an officer of Lender.  No waiver by Lender of any Default shall operate as a waiver of any other Default or the same Default on a future occasion.  Neither the failure nor any delay on the part of Lender in exercising any right, power, or remedy under this Note shall operate as a waiver thereof, nor shall a single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or remedy.

Except to the extent otherwise provided by the Note Documents or prohibited by law, Borrower and each other person liable under this Note waives presentment, protest, notice of dishonor, demand for payment, notice of intention to accelerate maturity, notice of acceleration of maturity, notice of sale and all other notices of any kind.  Further, each agrees that Lender may (i) extend, modify or renew this Note or make a novation of the Note evidenced by this Note, and/or (ii) grant releases, compromises or indulgences with respect to any collateral securing this Note, or with respect to Borrower or any other person liable under this Note or any other Loan Documents, all without notice to or consent of Borrower and other such person, and without affecting the liability of Borrower and other such person; provided, Lender may not extend, modify or renew this Note or make a novation of the Note evidenced by this Note without the consent of the Borrower, or if there is more than one Borrower, without the consent of at least one Borrower; and further provided, if there is more than one Borrower, Lender may not enter into a modification of this Note which increases the burdens of a Borrower without the consent of that Borrower.

11. Final Agreement.  This Note, the Stock Purchase Warrant and the Warrant Put Agreement represent the final agreement between the parties and may not be contradicted by evidence of prior, contemporaneous or subsequent agreements of the parties.  There are no unwritten agreements between the parties.

IN WITNESS WHEREOF, Borrower, on the day and year first above written, has caused this $211,012.00 Promissory Note to be duly executed under seal.

BORROWER:

NUEYES TECHNOLOGIES, INC.

By: _____
    *DocuSigned by: Mark Greget*
    5E2B97E853BD488...

Mark Greget, CEO

ACCEPTED BY LENDER:

MEDICAL DEVICE PARTNERS, LLC

By: _____