NEITHER THIS WARRANT NOR THE SHARES ISSUABLE UPON EXERCISE HEREOF HAVE BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED UNLESS SUCH SALE OR TRANSFER IS IN ACCORDANCE WITH THE REGISTRATION REQUIREMENTS OF SUCH 1933 ACT AND APPLICABLE LAWS OR, SUBJECT TO SECTION 18(b) BELOW, IN THE OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE COMPANY, SUCH REGISTRATION IS NOT REQUIRED.

## STOCK PURCHASE WARRANT

Warrant No. 1               Number of Shares: Up to 2.50% of Fully-Diluted Equity
                            subject to adjustment as set forth below in Sections 10 and 12

### NUEYES TECHNOLOGIES, INC.

**Issued on**:          May 31, 2019

1. **Issuance**. This Stock Purchase Warrant (this "Warrant") is issued to **MEDICAL DEVICE PARTNERS IV, LLC**, a Delaware limited liability company ("MDP" and, together with its successors and assigns, hereinafter called "Holder") by **NUEYES TECHNOLOGIES, INC.**, a California corporation (hereinafter with its successors and assigns called the "Company"). This Warrant is issued to MDP in connection with that certain Note, dated as of May 31, 2019, between Medical Device Partners IV, LLC, a Delaware limited liability company as lenders, and NuEyes Technologies, Inc, a California limited liability company ("NuEyes"), as borrowers and this Warrant is being issued as additional consideration to MDP for its agreements in the Note, by and between MDP and NuEyes. The Company and the Holder are also parties to a certain Warrant Put Agreement dated as of the date hereof, to which this Warrant is subject.

2. **Definitions**. As used herein, the following capitalized terms have the following definitions.

    (a) "Articles of Incorporation" means the Company's Articles of Incorporation and Statement of Conversion, as amended and/or restated and in effect from time to time.

    (b) "Common Stock" shall mean the Company's Class A, Class B, Class C, and Class D Stock. Class C stock has antidilution rights.

    (c) "Exercise Period" shall mean the earlier of (i) sixty (60) months after a Public Offering, and (ii) upon an Acquisition and of which the Holder has received the required notice in accordance with the terms of this Warrant.

    (d) "Exercise Price per Share" shall mean an amount equal to $1.00 divided by the number of all Shares underlying this Warrant.

    (e) "Fully Diluted Basis" shall mean the Company's outstanding and deemed outstanding capital stock, including (i) all Common Stock, (ii) all preferred stock on an as-converted to Common Stock basis, and (iii) all shares reserved for issuance under any equity incentive purchase plan or option plan of the Company and other options, warrants and other rights to purchase capital stock of the Company, and assuming the exercise of all outstanding warrants and options to purchase capital stock of the Company and the conversion of all rights to purchase capital stock of the

Company and any other securities convertible into or exchangeable for capital stock of the Company.

(f) "Preferred Stock" shall mean the Company's future Class of Stock with qualified preferences.

(g) "Public Offering" shall mean the Company's initial underwritten public offering and sale of Common Stock pursuant to an effective registration statement under the 1933 Act.

(h) "Shares" shall mean the Preferred Stock, or at the Holder's option, the Qualifying Shares, if any, as set forth in Section 3; subject to adjustment as set forth in Section 12 hereof.

(i) "Specified Number" means a number of Shares which shall, on an as-converted to Common Stock basis, equal 2.50% of the Company's capital stock on a Fully Diluted Basis measured on the date of exercise of this Warrant, subject to adjustment as set forth in Sections 10 and 12.

**3. Share Replacement Upon Qualifying Event.** If after the date hereof until and including the first bona fide arm's length round of equity (or equity equivalent) financing completed by the Company, the Company sells or issues its equity securities (or equity equivalents) with rights that are senior (or have economic attributes that are superior) to the Shares in a bona fide transaction or series of transactions with aggregate proceeds to the Company of at least $500,000 (the "Qualifying Event"), then, at the option of the Holder, the Shares shall be of the class and series sold or issued in the Qualifying Event (the "Qualifying Shares"). If prior to such Qualifying Event, the Company sells or issues its equity securities (or equity equivalents) (i) in a bona fide transaction or series of transactions with aggregate proceeds to the Company of at least $100,000, or (ii) in a transaction or series of transactions that is not considered bona fide hereunder, then the Holder may elect, at its option, to treat any such financing described in clause (i) or (ii) as a Qualifying Event, and the securities issued in such financing as Qualifying Shares.

**4. Exercise Price; Number of Shares; Certain Agreements.**

**(a)** Commencing on the date hereof through the Exercise Period, Holder is entitled, upon surrender of this Warrant together with the subscription form annexed hereto duly executed at the principal office of the Company, to purchase from the Company, up to the Specified Number of Shares for the Exercise Price per Share for each such Share purchased.

**(b)** The person or persons in whose name or names any certificate representing Shares issued upon any exercise hereof is required to be issued shall be deemed to have become the holder of record of such Shares as at the close of business on the date this Warrant is exercised with respect to such Shares, whether or not the transfer books of the Company shall be closed.

**(c)** [reserved]

**(d)** [reserved]

**5. Payment of Exercise Price.** The aggregate Exercise Price per Share may be paid in cash by certified or bank check or by wire transfer of funds to the account designated by the Company.

**6. Delivery of Stock Certificates.** This Warrant shall be deemed to have been exercised immediately prior to the close of business on the later of (i) the date of its surrender for exercise and (ii) the date the Holder tenders the Exercise Price per Share for each such Share purchased, as provided above, and the person entitled to receive the Shares issuable upon such exercise shall be treated for all purposes as the holder of record of such shares as of the close of business on such date. As promptly as practicable on or after such date, the Company at its expense shall issue and deliver, to the person or persons entitled to receive the same, a certificate or certificates for the number of Shares issuable upon such exercise.

**7. No Fractional Share.** In no event shall any fractional Share be issued upon any exercise of this Warrant. If, upon exercise of this Warrant, the Holder would, except as provided in this **Section 7**, be entitled to

receive a fractional Share, then the Company shall, in lieu of such fractional Share, pay to Holder in cash an amount equal to the fair market value of such fractional Share.

8. **Expiration Date; Treatment of Warrant on Acquisition**.

(a) Expiration Date. Subject to **Section 8(b)** below, this Warrant shall expire at 5:00 PM, US Eastern time, on the last day of the Exercise Period (or, if such date be not a business day, then at 5:00 PM, US Eastern time on the first business day following such date) (the "Expiration Date").

(b) Treatment of Warrant on Acquisition. In the event of an Acquisition in which the consideration to be received by the Company or its stockholders consists solely of cash, subject to Holder's prior receipt of notice of such Acquisition pursuant to this Section 8(b), this Warrant shall terminate on and as of the closing of an Acquisition to the extent not exercised prior thereto (which exercise may be made conditional upon the closing of such Acquisition). As used herein, "Acquisition" means (i) a sale, assignment, transfer or other disposition of all or substantially all of the Company's assets to an unaffiliated entity, (ii) a merger or consolidation of the Company into or with another entity where the holders of the Company's outstanding voting equity securities as of immediately prior to the closing of such transaction beneficially own less than a majority of the issued and outstanding voting equity securities of the surviving or successor entity as of immediately after the closing of such transaction, or (iii) any transaction or series of related transactions pursuant to which Company stockholders sell or otherwise transfer outstanding Company shares constituting a majority of the total outstanding combined voting power of the Company to an unaffiliated entity. The Company shall provide Holder with written notice of any Acquisition not less than ten (10) days prior to the closing thereof (which notice shall summarize the principal terms and conditions of such Acquisition), and shall provide Holder at its request with copies of all term sheets, draft and definitive transaction agreements and documents and other information and materials respecting such Acquisition as Holder may reasonably request, promptly following Holder's request therefor.

9. **Reserved Shares; Valid Issuance**. The Company covenants that it will at all times from and after the date hereof reserve and keep available out of its authorized and unissued capital stock such number of shares as will be sufficient to permit the exercise of this Warrant in full; provided that if such number of Shares cannot be determined or is not so reserved, prior to the exercise hereof, the Company shall take any corporate action that may be necessary in order for the Company to have unissued and reserved in its authorized capital all of the Shares or other securities that the Holder is entitled to receive on the full exercise hereof in accordance with the provisions hereof. The Company further covenants that all Shares issued pursuant to such exercise and, if applicable, such conversion will, upon issuance, be duly and validly issued, fully paid and non-assessable and, to the knowledge of the Company, free from all liens, claims and encumbrances (other than restrictions imposed by applicable federal and state securities laws).

10. **Stock Splits and Dividends**. In case at any time and from time to time after the date hereof the Company shall subdivide the outstanding shares of the Common Stock, by split-up or otherwise, into a greater number of shares, or combine the outstanding shares of the Common Stock into a lesser number of shares, or issue additional shares of the Common Stock in payment of a stock dividend upon the outstanding shares of the Common Stock, then upon each such event the number of Shares issuable on the exercise of this Warrant shall forthwith be proportionately increased in the case of a subdivision or stock dividend, or proportionately decreased in the case of a combination, and the Exercise Price per Share shall forthwith be proportionately decreased in the case of a subdivision or stock dividend, or proportionately increased in the case of a combination.

11. **Registration Rights**. As of the date hereof, Holder and the Company are entering into that certain Registration Rights Agreement granting to Holder those certain registration rights set forth therein. In the event that any stockholders of the Company are granted registration rights following the date hereof in addition to those registrations rights set forth in the Registration Rights Agreement and prior to the expiration hereof, the Company shall upon the Holder's request include the Shares for which this Warrant is exercisable as registrable securities (or comparable designation) for all purposes under the agreement granting such additional registration rights on a *pari passu* basis with all other holders of shares of the Preferred Stock (including on an as-converted basis) who are parties thereto.

**12.** **Reclassifications Etc.** In case at any time and from time to time after the date hereof there shall be any reclassification, reorganization, recapitalization, substitution, exchange or similar event affecting the Shares or outstanding shares of the Common Stock (other than an event described in **Section 8(b)** or **Section 10** above), this Warrant shall, following such event, be exercisable for the same class, series and number of securities and other property that Holder would have received had Holder exercised this Warrant in full in accordance with **Section 4** above as of immediately prior to the effectiveness of such event, and the Exercise Price per Share shall be adjusted proportionately (but in no event shall the aggregate Exercise Price per Share hereunder increase as a result of any reclassification, reorganization, recapitalization, substitution, exchange or similar event).

**13.** **Certificate of Adjustment**. Whenever the Exercise Price per Share or number of Shares is adjusted as herein provided, the Company shall promptly deliver to the Holder a certificate of the Company's chief financial officer or other authorized officer setting forth the Exercise Price per Share and number of Shares following such adjustment and setting forth a brief statement of the facts resulting in such adjustment.

**14.** **Notice of Certain Events.** If the Company proposes at any time (a) to declare, make or pay any dividend or distribution upon the Shares or outstanding shares of the Common Stock, whether in cash, securities or other property and whether or not a regular cash dividend, or to repurchase or redeem any Shares or outstanding shares of the Common Stock from any holder or holders thereof; (b) to offer for subscription or sale pro rata to the holders of the Shares or outstanding shares of the Common Stock any additional shares of any class or series of the Company's stock (other than pursuant to contractual pre-emptive rights); (c) to effect any reclassification, reorganization, recapitalization, substitution, exchange or similar event affecting the Shares or outstanding shares of the Common Stock; or (d) to effect an Acquisition or to liquidate, dissolve or wind up; then, in connection with each such event, the Company shall give Holder at least ten (10) days written notice thereof prior to the earliest to occur of (i) any record date for determining the stockholders entitled to vote thereon, (ii) any vote of stockholders thereon (whether at a meeting or by written consent in lieu of meeting), or (iii) the consummation or effective date thereof.

**15.** **Company Representations, Warranties and Covenants**. This Warrant is issued and delivered by the Company and accepted by Holder in reliance on the following representations, warranties and covenants made by the Company:

**(a)** The Company has all necessary authority to issue, execute and deliver this Warrant and to perform its obligations hereunder. This Warrant has been duly authorized issued, executed and delivered by the Company and is the valid and binding obligation of the Company, enforceable in accordance with its terms.

**(b)** At all times during the term of this Warrant, the Company shall timely take all necessary corporate actions to ensure that the Shares issuable upon the exercise of this Warrant shall be duly authorized and reserved for issuance by the Company upon exercise hereof and, when issued in accordance with the terms hereof the Shares (and such conversion shares) will be duly and validly issued, fully paid and non-assessable.

**(c)** The issuance, execution and delivery of this Warrant do not, and the issuance of the Shares upon the exercise of this Warrant in accordance with the terms hereof will not, (i) violate or contravene the Company's Certificate of Formation or by-laws, or any law, statute, regulation, rule, judgment or order applicable to the Company, (ii) violate, contravene or result in a breach or default under any material contract, material agreement or instrument to which the Company is a party or by which the Company or any of its assets are bound or (iii) require the consent or approval of or the filing of any notice or registration with any person or entity except as may be required under federal and state securities laws.

**(d)** At all times prior to a Public Offering (and without duplication of the same or substantially similar information otherwise provided to Holder under the Loan Agreement), as long as this Warrant is, or any Shares issued upon exercise of this Warrant are, outstanding and held by Holder, the Company will at its sole expense provide to the Holder from time to time with: (i) copies of all notices and other written communications to the holders of Shares or outstanding shares of the Common Stock, concurrently with the delivery of such notices and other communications to such holders, (ii) within one hundred eighty (180) days after the end of each fiscal year of the Company, the annual audited financial statements of the Company certified by independent public accountants of recognized standing; (iii) within thirty (30) days after the end of each month of the Company, unaudited financial statements; <u>provided</u>, that the Company shall not be required to provide Holder with any such

monthly financial statements if, on the date such statement is otherwise due hereunder, the Loan Agreement is then in force and effect and the Company is in compliance with its obligations to provide monthly financial statements under Section 6.09 thereof, and (iv) such other business and financial information of or concerning the Company as Holder may reasonably request from time to time, promptly following the Holder's request therefor.

    **(e)**  The Company capitalization table attached hereto as **Exhibit A** is true and correct in all material respects as of the date hereof.

  **16.**  **Amendment and Waiver**. The terms of this Warrant may be amended, modified or waived only with the written consent of the Holder and the Company.

  **17.**  **Representations and Covenants of the Holder**. This Warrant has been entered into by the Company in reliance upon the following representations and covenants of the Holder:

    **(a)**  **Authorization.** Holder represents that it has full power and authority to enter into this Warrant. This Warrant constitutes the Holder's valid and legally binding obligation, enforceable in accordance with its terms, except as may be limited by (i) applicable bankruptcy, insolvency, reorganization, or similar laws relating to or affecting the enforcement of creditors' rights and (ii) laws relating to the availability of specific performance, injunctive relief or other equitable remedies.

    **(b)**  **Investment Purpose**. This Warrant is being acquired by Holder, and the Shares issued upon any exercise hereof will be acquired by Holder, for investment and not with a view to the sale or distribution of any part thereof, and the Holder has no present intention of selling or engaging in any public distribution of the same except pursuant to a registration or exemption.

    **(c)**  **Accredited Investor**. Holder is an "accredited investor" within the meaning of Rule 501 of Regulation D under the 1933 Act, as presently in effect.

    **(d)**  **Private Issue**. The Holder understands (i) that the Shares issuable upon exercise of the Holder's rights contained herein is not registered under the 1933 Act or qualified under applicable state securities laws on the ground that the issuance contemplated by this Warrant will be exempt from the registration and qualifications requirements thereof, and (ii) that the Company's reliance on such exemption is predicated on the representations set forth in this **Section 17**.

    **(e)**  **Financial Risk**. The Holder has such knowledge and experience in financial and business matters as to be capable of evaluating the merits and risks of its investment in this Warrant and the Shares and has the ability to bear the economic risks of its investment. The Holder acknowledges that it has received all the information it considers necessary or appropriate for deciding whether to acquire the Warrant. The Holder further represents that it has had an opportunity to ask questions and receive answers from the Company regarding the terms and conditions of the offering of the Warrant.

    **(f)**  **Market Stand-Off**. The Holder hereby agrees that it will not, without the prior written consent of the managing underwriter, during the period commencing on the date of the final prospectus relating to the Public Offering of shares of the Company's Common Stock or any other equity securities under the 1933 Act on a registration statement on Form S-1 and ending on the date specified by the Company and the managing underwriter (such period not to exceed one hundred eighty (180) days in the case of the Public Offering, which period may be extended upon the request of the managing underwriter, to the extent required by any "FINRA" rules, for an additional period of up to thirty-four (34) days if the Company issues or proposes to issue an earnings or other public release within thirty-four (34) days of the expiration of the 180-day lockup period), (i) lend, offer, pledge, sell, contract to sell, sell any option or contract to purchase, purchase any option or contract to sell, grant any option, right, or warrant to purchase, or otherwise transfer or dispose of, directly or indirectly, any shares of Common Stock or any securities convertible into or exercisable or exchangeable (directly or indirectly) for Common Stock whether such shares or any such securities are then owned by the Holder or are thereafter acquired or (ii) enter into any swap or other arrangement that transfers to another, in whole or in part, any of the economic consequences of ownership of such securities, whether any such transaction described in clause (i) or (ii) above is to be settled by delivery of Common Stock or other securities, in cash, or otherwise. The foregoing provisions of this **Section 17** shall apply

only to the Public Offering, shall not apply to the sale of any shares to an underwriter pursuant to an underwriting agreement, and shall be applicable to the Holder only if all officers, directors, stockholders, and holders of options or warrants to purchase the Company's capital stock individually owning more than one percent (1%) of the Company's outstanding Common Stock (after giving effect to conversion into Common Stock of all outstanding preferred stock) are subject to the same restrictions. The underwriters in connection with such registration are intended third-party beneficiaries of this **Section 17** and shall have the right, power, and authority to enforce the provisions hereof as though they were a party hereto. The Holder further agrees to execute such agreements as may be reasonably requested by the underwriters in connection with such registration that are consistent with this **Section 17** or that are necessary to give further effect thereto.

    **18.**    **Notices, Transfers, Etc.**

    **(a)**    All notices and other communications required or permitted hereunder shall be in writing and shall be deemed effectively given: (i) upon personal delivery to the party to be notified; (ii) when sent by confirmed telex or facsimile if sent during normal business hours of the recipient; if not, then on the next business day; (iii) upon actual receipt in case of electronic transmission, (iv) five (5) days after having been sent by registered or certified mail, return receipt requested, postage prepaid; or (v) the next business day after deposit with a nationally recognized overnight courier, fee prepaid, specifying next business day delivery. All notices and other communications shall be addressed to a party at its address set forth below, or at such other address as a party may designate to the other party upon ten (10) days advance written notice.

| | |
|---|---|
| If to Company: | NuEyes Technologies, Inc. |
| | 120 Newport Center Drive, #232 |
| | Newport Beach, CA 92660 |
| | Attn: Mark Greget, President |
| | Tel: 9818-397-2285 |
| | Email: mark@nueyes.com |
| Copy to: | Madden, Jones, Cole & Johnson |
| | 3030 Old Ranch Parkway, Suite 100 |
| | Seal Beach, CA 90740 |
| | Attn: Steven A. Jones |
| | Tel: (562) 594-1360 |
| | Email: stevejones@maddenjones.com |
| If to Holder: | Medical Device Partners IV, LLC |
| | 9677 Bridgebrook Drive |
| | Boca Raton, Florida 33496 |
| | Attn: Ronald L. Sacher |
| | Email: back2bizventures@gmail.com |
| Copy to: | Jeffrey Sacher |
| | 12 Chanticleer Road |
| | Sudbury, Massachusetts 01776 |
| | Email: jeffrey.sacher@gmail.com |

    **(b)**    Subject to compliance with applicable federal and state securities laws, this Warrant may be freely transferred in whole or in part by the Holder, and any Shares issued on any exercise hereof may be freely transferred by Holder; <u>provided</u>, that at all times prior to the Public Offering, Holder shall not transfer this Warrant or any Shares to any person or entity who directly competes with the Company; <u>provided further</u>, that in connection with the transfer by Holder of any Shares issued on any exercise hereof, such transfer shall be subject to the srestrictions set forth in the agreements described in **Section 4(c)** above to which Holder is then a party or is then required to be a party pursuant to the provisions of such **Section 4(c)**. In connection with any transfer by Holder of this Warrant or, prior to the Public Offering, any Shares, upon surrender of this Warrant, or the certificate(s) evidencing such Shares, to the Company, together with the assignment notice annexed hereto duly executed for transfer of this Warrant or such Shares (i) as an entirety by the Holder, the Company shall issue a new warrant or

certificate of like tenor and denomination to the assignee, or (ii) with respect to transfers in part, the Company shall issue a new warrant or new certificate of like tenor to the assignee, in such denomination as shall be requested by the Holder hereof, and shall issue to such Holder a new warrant and new certificate of like tenor covering the Shares not so transferred or the Shares in respect of which this Warrant shall not have been transferred. In connection with any such transfer by Holder, the Company may require the execution and delivery of reasonable and customary investment representations and a reasonable and customary legal opinion that such transfer is exempt from the registration requirements of the 1933 Act; provided, that no legal opinion shall be required in connection with any transfer by Holder to an "affiliate" (as defined in Regulation D promulgated under the 1933 Act ("Regulation D") of Holder, provided that such affiliate transferee is an "accredited investor" as defined in Regulation D; nor shall such affiliate transferee be required to execute and deliver separate investment representations, but shall be deemed, upon receipt of this Warrant or portion thereof, or Shares, to have made to the Company each of the representations set forth in **Section 17** above.

**(c)** In case this Warrant shall be mutilated, lost, stolen or destroyed, the Company shall issue a new warrant of like tenor and denomination and deliver the same (i) in exchange and substitution for and upon surrender and cancellation of any mutilated Warrant, or (ii) in lieu of any Warrant lost, stolen or destroyed, upon receipt of an affidavit of the Holder and appropriate indemnification agreement in favor of the Company.

**19. Governing Law**. The provisions and terms of this Warrant shall be governed by and construed in accordance with the internal laws of the State of California, without giving effect to its principles regarding conflicts of laws, and the federal laws of the United States applicable therein.

**20. Successors and Assigns**. This Warrant shall be binding upon the Company's successors and assigns and shall inure to the benefit of the Holder's successors, legal representatives and permitted assigns. This Warrant may not be transferred or assigned by Holder to any other entity or person, by operation of law or otherwise, without Company's prior written consent.

**21. Business Days**. If the last or appointed day for the taking of any action required or the expiration of any rights granted herein shall be a Saturday or Sunday or a legal holiday in Delaware, then such action may be taken or right may be exercised on the next succeeding day which is not a Saturday or Sunday or such a legal holiday.

**22. Restrictive Legends.** Each certificate representing shares of the Company's capital stock received by the Holder upon exercise of this Warrant shall bear a legend substantially in the following form:

"THE SECURITIES EVIDENCED BY THIS CERTIFICATE HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED (THE "1933 ACT"), OR ANY APPLICABLE STATE SECURITIES LAWS, AND MAY NOT BE SOLD OR TRANSFERRED UNLESS SUCH SALE OR TRANSFER IS IN ACCORDANCE WITH THE REGISTRATION REQUIREMENTS OF SUCH 1933 ACT AND APPLICABLE LAWS OR ISSUED BY THE COMPANY TO MEDICAL DEVICE PARTNERS, LLC, IN THE OPINION OF COUNSEL IN FORM AND SUBSTANCE SATISFACTORY TO THE COMPANY, SUCH REGISTRATION IS NOT REQUIRED."

**23. Expenses**. In any action or proceeding between the parties to enforce the terms of this Warrant or a party's rights or obligations hereunder, the party prevailing in such action or proceeding shall be entitled to collect from the other party all of the prevailing party's reasonable costs and expenses (including, without limitation, reasonable attorneys' fees and disbursements) incurred in connection with such action or proceeding, including, without limitation, costs and expenses incurred in such prevailing party's investigation of any and all claims, facts and circumstances giving rise to such action or proceeding.

**24. Automatic Exercise upon Expiration**. In the event that, upon the Expiration Date, the fair market value of one Share is greater than the Exercise Price per Share in effect on such date, then this Warrant shall automatically be deemed on and as of such date to have been exercised as to all Shares for which it shall not previously have been exercised, pursuant to the provisions of **Section 4** above, and the Company shall promptly deliver to Holder a certificate representing the number of Shares issuable upon such exercise less the whole number

of Shares necessary to satisfy the aggregate Exercise Price per Share for the number of Shares being deemed purchased plus in cash the value of any fractional Share not issued.

        25.      **Severability**.  If any part of this Warrant is contrary to, prohibited by, or deemed invalid under applicable laws or regulations, such provision shall be inapplicable and deemed omitted to the extent so contrary, prohibited or invalid, but the remainder hereof shall not be invalidated thereby and shall be given effect so far as possible.

        26.      **Counterparts; Electronic Signatures**.  This Warrant may be executed in any number of, and by different parties hereto on, separate counterparts, all of which, when so executed, shall be deemed an original, but all such counterparts shall constitute one and the same agreement.  Any signature delivered by a party by facsimile or email transmission shall be deemed to be an original signature hereto.

*[Remainder of page left blank intentionally; signature page follows]*

IN WITNESS WHEREOF, the Company has caused this Warrant to be executed by its duly authorized officer as of the date first above written.

**NUEYES TECHNOLOGIES, INC.**

By: *Mark Greget* (DocuSigned by: 5E2B97E853BD488...)
Name:  Mark Greget
Title:  President

Acknowledged and agreed to:

**MEDICAL DEVICE PARTNERS IV, LLC**

By:  Medical Device Management Group, LLC,
     Its Manager

By:  _____
Name:  _____
Title:  _____

{00915923.DOC;1 }

**Subscription**

To:_____

Date:_____

The undersigned hereby subscribes for _____ shares of the Shares covered by the Stock Purchase Warrant attached hereto. The certificate(s) for such shares shall be issued in the name of the undersigned or as otherwise indicated below:

_____
Signature

_____
Name for Registration

_____
Mailing Address

-2-

DocuSign Envelope ID: 54342E0D-D273-4310-A22A-F084C8AECD1FA

**Assignment**

For value received _____ hereby sells, assigns and transfers unto
_____

_____
[Please print or typewrite name and address of Assignee]
_____
the within Warrant, and does hereby irrevocably constitute and appoint _____
its attorney to transfer the within Warrant on the books of the within named Company with full power of substitution on the premises.

Dated:_____

_____
Signature

_____
Name for Registration

In the Presence of:

_____

*{00915923.DOC;1 }*

**EXHIBIT A**

**Capitalization Table**

The Company's authorized capital stock consists of: